# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOHN A. CORTESE, JR. | CIVIL ACTION |
| --- | --- |
| v. | NO. 18-3804 |
| ARTHUR SABATINO, DAMON VASQUEZ, DOES 1-10, RICHARD J. ROSS, JR., and THE CITY OF PHILADELPHIA | |

### MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                                                          **March 15, 2019**

This case involves alleged violations of Section 1983 and state law that occurred during the course of Plaintiff John A. Cortese, Jr.'s arrest by members of the Philadelphia Police Department in September 2016. Defendants Arthur Sabatino, Damon Vasquez, Richard J. Ross, Jr., and the City of Philadelphia (the "City," collectively "Defendants") now move to dismiss the claims pled against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 3). For the reasons stated below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**I.     Background**

For the purposes of this motion, the following facts are taken as true from Plaintiff's Complaint. (ECF 1, "Compl." or "Complaint").

On September 14, 2016, Plaintiff's mother called 9-1-1 and reported that Plaintiff had destroyed property at her residence and had engaged in a physical altercation with her, which left her injured. (Id. ¶¶ 21–24). Philadelphia Police Officers Sabatino and Vasquez (together, the "Officers") responded to the call and, with Plaintiff's mother's permission, entered the residence where they arrested Plaintiff. (Id. ¶¶ 25–26). While handcuffing Plaintiff, both Plaintiff and his mother informed the Officers that Plaintiff had a pre-existing condition affecting his left wrist, and

1

for which he was scheduled to have a surgical procedure performed. (Id. ¶¶ 28–30). Plaintiff and his mother asked the Officers to refrain from applying the handcuffs too tightly. (Id.). Sabatino responded "this is what you get for beating[]up your mother," and proceeded to tighten the handcuffs further. (Id. ¶¶ 31–32).

Allegedly ignoring Plaintiff's requests to loosen the handcuffs' grip, the Officers then "recklessly thr[e]w" Plaintiff into their police wagon, and he landed "on his back and on top of his handcuffed wrists." (Id. ¶¶ 34–36). Plaintiff continued to protest, and the Officers eventually took him to the emergency room, where he was treated for bruises to his body and "the aforesaid injuries to his wrists." (Id. ¶ 37). The Officers then reapplied the handcuffs and transported Plaintiff to the Curran-Fromhold Correctional Facility in Philadelphia, Pennsylvania. (Id. ¶¶ 38–39.) He was held without medical treatment for at least two days. (Id. ¶¶ 39–40). Plaintiff was ultimately released and all criminal charges against him were withdrawn. (Id. ¶¶ 41–42).

After his detainment, Plaintiff sought medical care for ongoing wrist pain and "a dangerous and spreading infection," and he learned that the Officers' actions caused additional injury to his wrists, which will require further treatment including possible surgery. (Id. ¶¶ 44–47).

After describing the arrest and ensuing injury, Plaintiff's Complaint goes on to cite a report produced in December 2003 by the Integrity and Accountability Office of the Philadelphia Police Department (the "Report"), which focused on the sufficiency of disciplinary action in response to complaints of misconduct against police officers. (Id. ¶ 54). Plaintiff alleges that the Report "cited serious shortcomings" in a disciplinary system that "remains fundamentally ineffective, inadequate and unpredictable." (Id. ¶¶ 56–57).

Plaintiff alleges that Ross—the Chief of the Philadelphia Police Department—and the City have shown deliberate indifference to the rights of citizens to be free from: (1) excessive force by

police; (2) racism in law enforcement; and (3) retaliation for exercising their First Amendment rights. (Id. ¶¶ 58, 60, 62). Ross and the City have done so by: (a) failing to provide sufficient training or supervision; (b) failing to punish misconduct adequately; (c) tolerating misconduct; (d) failing to properly or impartially investigate citizen complaints; (e) tolerating, encouraging, and permitting collusive statements by fellow officers; and (f) ignoring systemic deficiencies in the Philadelphia Police Department's investigatory and disciplinary mechanisms. (Id. ¶¶ 58, 60, 62). Plaintiff alleges that Ross and the City thus have a "longstanding, widespread, deliberately-indifferent, custom, habit, practice and/or policy" of permitting the use of excessive force, racism, and First Amendment retaliation, and failing to supervise or train officers in a way that would prevent against such misconduct. (Id. ¶¶ 59, 61, 63). Instead, Ross and the City allow citizen complaints of such misconduct to pass through the Philadelphia Police Department's Internal Affairs unit without appropriate scrutiny. (Id. ¶¶64–66).

In line with the Philadelphia Police Department's alleged policies, Plaintiff alleges Ross and the City ratified and "declare[d] to be within policy" the Officers' "unconstitutional, racist and retaliatory actions with a bogus, insufficiently investigated and partial Internal Affairs finding of non-fault and justifiable use of deadly force." (Id. ¶ 67).

Plaintiff claims to have suffered: (1) loss of constitutional, state, and federal rights; (2) physical injuries, impairments, and disfigurement; (3) physical pain and emotional distress; (4) aggravation of a pre-existing condition; and (5) ongoing expenses for medical and psychological treatment. (Id. ¶ 68). He seeks compensatory, special, and punitive damages, as well as attorneys' fees and costs, and pre- and post-judgment interest.

The Complaint is comprised of the following seven counts:

Count I: 42 U.S.C. § 1983—Excessive force in violation of the Fourth and Fourteenth Amendments—pled against Sabatino and Vasquez.

Count II: 42 U.S.C. § 1983—Retaliation in violation of the First Amendment—pled against Sabatino and Vasquez.

Count III: 42 U.S.C. § 1983—Deliberately indifferent policies, practices, customs, training, and supervision in violation of the Fourth, Fourteenth, and First Amendments, and in violation of 42 U.S.C. § 1981—pled against Ross and the City.

Count IV: Assault and battery—pled against Sabatino and Vasquez.

Count V: False arrest and false imprisonment—pled against Sabatino and Vasquez.

Count VI: Intentional infliction of emotional distress—pled against Sabatino and Vasquez.

Count VIII:[1] Conspiracy—pled against all Defendants.

Defendants moved to dismiss the Complaint in its entirety on October 4, 2018. (ECF 3, "Mot." or "Motion"). Plaintiff responded in opposition on November 7, 2018. (ECF 6, "Opp'n" or "Opposition"). Despite the absence of a Reply, Defendant's motion is now ripe for decision.

## II. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere

---

[1] The Complaint labels its final cause of action "Count VIII," when in fact it is the seventh count. For consistency's sake, the Court will refer to the conspiracy claim as Count VIII, but recognizes that it is, in fact, Plaintiff's seventh cause of action.

conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## III. Discussion

### A. Claims Brought Against Ross and the City

Defendants open their Motion by arguing that Ross and the City should be dismissed as defendants from this case because Plaintiffs have failed to establish liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

Municipalities are subject to § 1983 liability only where the municipality itself causes a constitutional violation—a municipality is not subject to *respondeat superior* or vicarious liability under § 1983. Monell, 436 U.S. at 691. "When a suit against a municipality is based on §1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the government body or informally adopted by custom." McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (internal quotation marks and citations omitted). "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." Id. at 658. If a plaintiff alleges that he or she was harmed by a custom, as opposed to a formally enacted policy, "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." Id. The plaintiff

must also establish causation by properly pleading that the policy or custom "was the source of [his] injury." Santiago v. Warminster Twp., 629 F.3d 121, 135 (3d Cir. 2010).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). To state a claim against a municipal entity for failure to train, the complaint must allege facts establishing that the municipality's failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quoting Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)).

Conclusory and general claims that simply paraphrase § 1983 will not satisfy federal pleading requirements because they "fail[] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." Wood v. Williams, 568 F. App'x 100, 104 (3d Cir. 2014) (quoting McTernan, 564 F.3d at 658–59).

Defendants argue that the many allegations put forth by Plaintiff to meet these Monell standards are merely "dead weight," as well as "conclusory, . . . boilerplate, repetitive, and inapplicable." Mot. at 7.[2] According to Defendants, Plaintiff has "fail[ed] to identify any specific facts that would create a plausible inference that municipal policies were the moving force behind the allegedly unconstitutional, isolated arrest made by Officers Sabatino and Vasquez." Mot. at 8.

---

[2] For example, although the Complaint alleges the City encourages "race-based animus," malicious prosecution, and the use of deadly force, Defendants highlight that Plaintiff has not alleged that he was injured by such conduct or that it played a role in his case.

6

In response, Plaintiff highlights a recent opinion by former Chief Judge Stengel "address[ing] (and reject[ing]) the very arguments made by Defendants in this case in ruling upon the adequacy of a Monell claim that had been set forth in a complaint that [was] nearly identical (for Monell purposes) to Plaintiff's Complaint." Opp'n at 7. Plaintiff attaches that opinion—Tucker v. City of Philadelphia, No. 16-3104, 2017 WL 5010032 (E.D. Pa. Nov. 2, 2017)—as well as the relevant complaint from that case. See Exhibits A & B to Opp'n (ECF 6-1). In Tucker, Judge Stengel concluded that allegations substantially similar—if not identical—to those in Plaintiff's Complaint were sufficient to "identif[y] municipal policies and/or customs that allegedly deprived [the plaintiff] of at least one federally protected right." Tucker, 2017 WL 5010032, at *5. The allegations derived from the same Report at issue in Plaintiff's Complaint before this Court.

Although this Court respects the former Chief Judge and his analysis of the Monell claims before him, we are not bound by the Tucker opinion. Plaintiff's allegations, while numerous, are conclusory and unrelated to the injuries he allegedly sustained. The Complaint alleges the following customs or policies without any further factual support: permitting police officers to use excessive force and failing to train law enforcement personnel in the appropriate constitutional limits on the use of force, id. ¶ 59; permitting retaliation for the exercise of First Amendment rights and failing to train law enforcement personnel to refrain from same, id. ¶ 63; and failing to properly discipline misconduct, id. ¶¶ 65–66. In threadbare and unsupported fashion, Plaintiff then alleges that the City and Ross were aware of these customs, id. ¶¶ 59, 63, 65–66, 67, and that he was injured as a result. Id. ¶ 68.

But Plaintiff's cause of action must stand on more than mere conclusory statements and threadbare recitations of the elements of his claim. Aside from the Defendant Officers' alleged conduct surrounding Plaintiff's arrest on September 14, 2016, the Complaint is devoid of any facts

7

suggesting that the Philadelphia Police Department engages in the above practices. Plaintiff cannot extrapolate from an isolated occurrence with those Officers, without more, to allege that their conduct evidenced a larger policy or custom endorsed by the City and Ross. Nor can Plaintiff rely on his brief mention of the 2003 Report to provide the necessary factual support to state a plausible claim for municipal liability. Plaintiff fails to allege specific facts showing that the Philadelphia Police Department had continued to suffer from the "shortcomings" identified in that Report at the time of Plaintiff's injuries—thirteen years after the Report was published. Plaintiff likewise fails to connect the Report in any way to the ensuing allegations of the Philadelphia Police Department's policies and customs that he claims allow him to sue the City and Ross under a theory of municipal liability. To the extent Plaintiff intended to rely on the Report as factual support for his otherwise conclusory allegations, he wholly failed to allege a connection between the two. Even if Plaintiff had alleged sufficient facts to plausibly state that the Philadelphia Police Department endorsed unconstitutional policies *and* that the City and Ross were aware of and acquiesced in such policies, the Complaint does not plausibly allege enough facts to show that those policies were the source of Plaintiff's injury.

For all of these reasons, Plaintiff's claims against the City and Ross are dismissed without prejudice.[3] Count III, pled only against the City and Ross, is dismissed in its entirety. Count VIII,

---

[3] The Court further notes that numerous litigants file Monell claims against the City and Ross on a regular basis. Unless and until Plaintiff can cite a jury verdict and/or a judicial determination that these Defendants, along with the Philadelphia Police Department, adopted and presently follow a policy or custom of violating citizens' constitutional rights in a manner relevant to Plaintiff's Complaint, this Court will view unsupported allegations of such policies or customs with scrutiny, if not doubt. In fact, the City has introduced evidence in a number of these cases that current Philadelphia Police Department policies and practices are respectful and in accord with constitutional rights. There are incidents of individual police officers who violate these standards, but such facts do not establish Monell liability or warrant litigation under a Monell theory.

pled against all Defendants, is hereby dismissed against the City and Ross and discussed below as it applies to the remaining Defendants in the case.

**B.      Excessive Force (Count I) & Assault and Battery (Count IV)**

Although Defendants seek dismissal of the Complaint in its entirety, they do not include any arguments for dismissal of Plaintiff's excessive force claim or assault and battery claim against Officers Sabatino and Vasquez. This Court therefore declines to dismiss Counts I and IV.

**C.      First Amendment Retaliation (Count II)**

To state a plausible claim for First Amendment retaliation, a plaintiff must allege that: (1) he engaged in constitutionally protected conduct; (2) there was retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the constitutionally protected conduct and the retaliatory action. Conard v. Pennsylvania State Police, 902 F.3d 178, 183 (3d Cir. 2018) (quoting Mirabella v. Villard, 853 F.3d 641, 649 (3d Cir. 2017)). The Third Circuit has made clear that all speech is protected by the First Amendment, except for a few narrow categories of speech such as obscenity, "fighting words," and libel. Eichenlaub v. Township of Indiana, 385 F.3d 274, 282–83 (3d Cir. 2004). The First Amendment's protections include speech criticizing and challenging police officers unless the speech presents a "clear and present danger of a serious substantive evil that rises far and above public inconvenience, annoyance, or unrest." City of Houston v. Hill, 482 U.S. 451, 461 (1987) (quoting Terminiello v. Chicago, 337 U.S. 1, 4 (1949)).

A plaintiff will sufficiently plead the causation requirement when he alleges that his "constitutionally protected conduct was a substantial or motivating factor" for the retaliatory conduct. Conard, 902 F.3d at 184 (quoting Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016)). Unusually suggestive timing can provide evidence of causation, as can "evidence gleaned from

the record as a whole." Id. Allegations of a "pattern of antagonism," in addition to the timing of events, can also suffice to state the causation element. Id.

In moving to dismiss Plaintiff's First Amendment retaliation claim, Defendants argue that Plaintiff cannot maintain the cause of action because probable cause existed for the arrest. Defendants cite Morales v. Taveras, No. 05-4032, 2007 WL 172392, at *14–15 (E.D. Pa. Jan. 18, 2007), which concluded that probable cause for an arrest defeated a First Amendment retaliation claim based on the plaintiff's arrest. Id. at *14. But Plaintiff has not alleged that his arrest was retaliation for protected activity. Rather, Plaintiff's claim alleges that his exercise of the "constitutionally protected right to question law enforcement officers" during the course of his arrest, Compl. ¶ 101, "was a substantially motivating factor in the excessive force used by [Officers Sabatino and Vasquez]." Compl. ¶ 102. Plaintiff alleges that he "informed Defendants Sabatino and Vasquez . . . that they were applying excessive pressure to his wrists, thereby causing same to bleed," Compl. ¶ 30, which was constitutionally protected speech. Officer Sabatino allegedly responded "this is what you get for beating[]up your mother," Compl. ¶ 31, and "tightened the handcuffs to exert even more pressure on Plaintiff's wrists." Compl. ¶ 32. Officers Sabatino and Vasquez then allegedly ignored Plaintiff's "desperate pleas for mercy and relief," Compl. ¶ 34, and "proceeded to recklessly throw Plaintiff into a police paddy wagon" where he landed on top of his handcuffed wrists. Compl. ¶¶ 35–36. These allegations, if true, are sufficient to conclude that Officers Sabatino and Vasquez increased the force used during the arrest, both by tightening Plaintiff's handcuffs and throwing him into the wagon on top of his wrists, in response to Plaintiff's complaints.

The Motion to dismiss Count II is therefore denied.

### D. False Arrest and False Imprisonment (Count V)

A successful false arrest claim under § 1983 requires a showing that police lacked probable cause to make the arrest. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). The same showing is required to state a claim under Pennsylvania common law. See Patzig v. O'Neil, 577 F.2d 841, 850 n.9 (3d Cir. 1978). "[F]alse arrest and false imprisonment are essentially the same claim." Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999) (citing Gagliardi v. Lynn, 285 A.2d 109, 111 (Pa. 2971) (finding "'false arrest' is synonymous with false imprisonment")), aff'd sub nom. Olender v. Rubenstein, 202 F.3d 254 (3d Cir. 1999). Thus to bring a claim for false imprisonment, a plaintiff must allege (1) that there was a detention; and (2) that the detention was unlawful. James v. City of Wilkes-Barre, 700 F.3d 675, 682–83 (3d Cir. 1999); Groman, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."). The central question in both claims is whether there was probable cause to arrest and detain Plaintiff.

An officer has probable cause for an arrest "when the facts and circumstances within the arresting officer's knowledge are sufficient . . . to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995); see also Lincoln v. Hanshaw, 375 F. App'x 185, 190 (3d Cir. 2010) ("[P]robable cause was established as a matter of law at the time that . . . a complaining victim who had suffered an injury[] made the allegations against the [arrestees] and correctly identified them"). As a general matter, the existence or lack of probable cause is a factual determination. Dempsey v. Bucknell Univ., 834 F.3d 457, 468 (3d Cir. 2016).

As a fact-based question, the Court recognizes that the determination about the existence of probable cause is often not appropriate for the motion to dismiss phase. Here, however, after accepting all Plaintiff's factual allegations as true, which the Court must do when deciding a 12(b)(6) motion, it is clear that Plaintiff cannot state a claim for false arrest under federal or state law. By Plaintiff's own allegations, his mother called 9-1-1 to report that Plaintiff had destroyed her flower bed and that she and Plaintiff were involved in a physical altercation that left her injured. When Officers Sabatino and Vasquez responded to the 9-1-1 call, Plaintiff's mother let them into the house, where they found Plaintiff and arrested him. The above facts establish probable cause to arrest, as a matter of law, and Plaintiff alleges no other facts to suggest otherwise.

Count V is dismissed without prejudice.

### E. Intentional Infliction of Emotional Distress (Count VI)

To state a claim for intentional infliction of emotional distress (IIED), a plaintiff must allege that: (1) the defendant engaged in conduct that was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) that distress was severe. Hoy v. Angelone, 691 A.2d 476, 482 (1997). Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Gray v. Huntzinger, 147 A.3d 924, 928 n.1 (Pa. Super. 2016) (citing Restatement (Second) of Torts § 46 comment d (1965)).

Defendants argue that Plaintiff's claim does not rise to the level of "extreme and outrageous conduct" and that Plaintiff has failed to allege that he suffered severe emotional distress. Mot. at 11–12. Taking the facts in a light most favorable to Plaintiff, the Complaint alleges that Plaintiff and his mother repeatedly asked Officers Sabatino and Vasquez to take care with Plaintiff's wrists,

that the Officers intentionally injured Plaintiff's wrists and caused him great pain and suffering as a result of his requests for leniency, and that the Officers then purposely threw Plaintiff into their van in such a way that they knew would cause Plaintiff further injury. At this early stage of the litigation, the Court concludes that these allegations plausibly demonstrate that Officers Sabatino and Vasquez engaged in extreme and outrageous conduct. The Complaint also plausibly states that the conduct caused Plaintiff severe emotional distress. See Compl. ¶¶ 48–50, 154.

Defendants' Motion to dismiss Count VI is denied.

### F. Conspiracy (Count VIII)

In order to sufficiently plead a conspiracy claim under § 1983, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of rights in furtherance of the conspiracy by a party to the conspiracy. Rosembert v. Borough of East Lansdowne, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (Goldberg, J.) (quoting Gale v. Storti, 608 F. Supp. 2d 629, 636 (E.D. Pa. 2009) (Brody, J.)). Plaintiff must further allege "that there was an agreement or meeting of the minds to violate his constitutional rights." Id.; see also Jutrowski v. Township of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (holding that a claim for conspiracy under §1983 requires a showing of "agreement and concerted action").

Defendants argue that, to survive a motion to dismiss, a plaintiff should "identify with particularity the conduct violating the plaintiff's rights, the time and place of these actions, and the people responsible therefor." Disco v. Roth, No. 17-4132, 2018 WL 3387381, at *7 (E.D. Pa. July 12, 2018). Plaintiff responds by noting that conspiracy claims should not be subjected to a heightened standard of pleading. See Jones v. Bock, 549 U.S. 199, 212–13 (2007) (acknowledging that courts may not impose a heightened pleading standard in § 1983 suits against municipalities); accord Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163,

168 (1993). In civil rights actions against individual defendants, "[p]laintiffs must allege conspiracy with particularity, even though a heightened pleading standard does not apply." Bieros v. Nicola, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (internal citations omitted).

Per the Court's analysis, above, this claim has already been dismissed against the City and Ross. Even under liberal pleading standards, Plaintiff has failed to state a claim for conspiracy against the remaining Defendants. The Complaint is devoid of any allegations suggesting the existence of a conspiracy, and Plaintiff does not allege that the Officers had an agreement or that there was a meeting of the minds to violate his constitutional rights. Plaintiff's conspiracy claim is therefore dismissed without prejudice.

**IV. Conclusion**

For the reasons stated above, the Motion to Dismiss (ECF 3) is GRANTED IN PART and DENIED IN PART. Plaintiff is granted leave to amend the dismissed claims in accordance with Federal Rule of Civil Procedure 15(a).

An appropriate Order follows.

O:\CIVIL 18\18-3804 Cortese v. Sabatino\18cv3804 Memo re Mot to Dismiss